## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

ADVANCE CABLE COMPANY, LLC and
PINEHURST COMMERCIAL INVESTMENTS, LLC,

       Plaintiffs,

   v.                                 Case No. 13-cv-229-wmc

THE CINCINNATI INSURANCE COMPANY,

       Defendant.

## PLAINTIFFS' BRIEF IN SUPPORT OF
## THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

This case arises from an insurance company, The Cincinnati Insurance Company's ("Cincinnati Insurance"), wrongful refusal to indemnify its policyholders, Advance Cable Company, LLC and Pinehurst Commercial Investments, LLC (collectively, "Advance Cable"), with respect to hail damage to an insured commercial building located at 2113 Eagle Drive, Middleton, Wisconsin 53562 ("the Property").

Cincinnati Insurance insured Advance Cable from August 1, 2010 to August 1, 2013 under a "Commercial Primary Policy," Cincinnati Insurance policy number EPP 003 30 85 / EBA 003 30 85 ("the Policy"). Under the Policy, Cincinnati Insurance promised Advance Cable $2,075,000.00 in "blanket building" coverage for "direct physical 'loss'" to the Property.

While the Policy was in full force and effect, on April 3, 2011, a hail storm struck Middleton, Wisconsin, causing direct physical loss to, including considerable denting and associated corruption of the metal equipment and surfaces of the roof of, the Property. Advance Cable repeatedly requested that Cincinnati Insurance indemnify it with respect to that hail damage; however, Cincinnati Insurance outright denied those requests.

In an effort to defend its denial, Cincinnati Insurance argues that it owes no duty to indemnify Advance Cable with respect to the hail damage because: (1) the damage is "cosmetic," not "structural"; and (2) the damage is not visible from ground level. However, Cincinnati Insurance's arguments have no basis in fact or law—and as reflected in its recent filing with the Wisconsin Office of the Commissioner of Insurance ("the Insurance Commissioner"), Cincinnati Insurance *knows* as much.

Contrary to Cincinnati Insurance's arguments, the Policy does not distinguish between direct physical loss that is "cosmetic" and direct physical loss that is "structural," much less condition coverage for either type of loss based on whether the loss is visible from ground level. Even assuming the hail damage is precisely as Cincinnati Insurance describes it, the Policy unambiguously affords coverage for that damage. Pursuant to Federal Rule of Civil Procedure 56(a), Advance Cable respectfully requests that this Court enter an order for partial summary judgment accordingly.

## FACTS

### I. The Policy.

As indicated above, Cincinnati Insurance insured Advance Cable from August 1, 2010 to August 1, 2013 under the Policy. (PFOF 12.) The Policy's "Commercial Property Coverage Part" promises $2,075,000.00 in "blanket building" coverage pursuant to the following broad grant of coverage:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> . . .
>
> SECTION A. COVERAGE
>
> We will pay for direct physical "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

(PFOF 14-15.)

The Policy defines "loss" as follows:

> "Loss" means accidental loss or damage.

(PFOF 16.)

The Policy defines "Covered Property" as follows:

> Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:
>
> a.   Building
>
> Building, means a building or structure described in the Declarations . . . .

(PFOF 17.) The "types of property for which a Limit of Insurance is shown in the Declarations" includes "blanket building" coverage. (PFOF 18.)

The Policy defines "premises" as follows:

> "Premises" means the Location of Premises described in the Declarations.

(PFOF 19.) The "Location of Premises described in the Declarations" (which in turn refers to a "Schedule of Locations," form IA 904) includes:

> 2113 EAGLE DR
> MIDDLETON, WI 53562-2551

(PFOF 20.)

Finally, the Policy defines "Covered Cause of Loss" as follows:

> Covered Cause of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the "loss" is:
>
> (1) Excluded in SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions; or
>
> (2) Limited in SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations . . . .

(PFOF 21.) The Policy does *not* include any exclusion or limitation excluding coverage for hail damage.

## II. The Damage.

During the Policy period, on April 3, 2011, a hail storm caused physical damage to the metal equipment and surfaces of the roof of the Property. (PFOF 22-23.) Cincinnati Insurance's "expert" observed of that damage:

> Metal roof panel denting characteristic of hail impact was found on [the Property] . . . . Dents related to hail impact varied in size from barely discernible to approximately 1" in 1 [sic] diameter. Hail impact denting of metal heat stack caps and metal coping was also observed.

(PFOF 23.)[1]

---

[1] Although the parties dispute the precise nature and extent of the hail damage, that dispute is immaterial for purposes of this motion. For purposes of this motion (only), Advance Cable assumes: (1) that the damage merely is "hail impact denting," as represented by Cincinnati Insurance's "expert"; (2) that the damage is "cosmetic," not "structural"; and (3) that the damage is not visible from ground level.

### III. The Filing.

Nearly two years after the hail storm, on March 18, 2013, Cincinnati Insurance filed with the Insurance Commissioner a request for approval of "a new optional endorsement to limit coverage on roofs and roof surfaces":

> COVERAGE LIMITATIONS FOR ROOFS AND ROOF SURFACES
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL PROPERTY COVERAGE PART
> . . .
>
> C.  Exclusion of Cosmetic or Appearance Damage to Roofs and Roof Surfaces
>
> For the purposes of this endorsement only, the first paragraph in BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE is deleted in its entirety and replaced with the following:
>
> We will pay for direct physical "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.
>
> However, for the Covered building or structure indicated in the Schedule of this endorsement under Option II [*i.e.*, the "Exclusion of Cosmetic or Appearance Damage to Roofs and Roof Surfaces" option], we will not pay for cosmetic damage that alters the physical cosmetic appearance of any part of the roof or roof surfacing but does not prevent the roof from functioning as a barrier to the entrance of the outdoor elements. Cosmetic damage means superficial damage that does not impair the structure or integrity of the roof or prevent the roof from keeping outdoor elements from entering the building to the same extent as it did before the cosmetic damage occurred. Non-cosmetic damage means damage to any part of the roof or roof surfacing that allows the outdoor elements to enter the building and/or damage to the roof structure itself such that that roofing system itself is in need of repair in order to continue to function as a barrier to the outdoor elements.

(PFOF 24-25.) The Policy does *not* include that endorsement. (PFOF 27.)[2]

---

[2]  As indicated in Cincinnati Insurance's filing with the Insurance Commissioner, the endorsement's anticipated "effective date" is October 15, 2013—two months after the Policy expires. (PFOF 26.)

**ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 56(a), this Court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As the United States Court of Appeals for the Seventh Circuit has held:

> The nonmoving party cannot simply rely on its pleadings. If the moving party demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim, and the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.

*Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 959 (7th Cir. 1989). As the United States Court of Appeals for the Seventh Circuit further has held:

> The evidence must create more than some metaphysical doubt as to the material facts. A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quotations and citations omitted). In short, this Court should grant summary judgment "to avoid trials where there is nothing to try." *Zimbauer v. Milwaukee Orthopaedic Group, Ltd.*, 920 F. Supp. 959, 969 (E.D. Wis. 1996); *see also* Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment ("The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial.").

Advance Cable respectfully submits that applying these standards, this Court should grant partial summary judgment in favor of Advance Cable and against Cincinnati Insurance, declaring that the Policy unambiguously affords coverage for

the hail damage to the Property. This motion presents a straightforward issue of insurance policy construction, a question of law particularly well suited for summary judgment. *See Burgess v. J.C. Penney Life Ins. Co.*, 167 F.3d 1137, 1139 (7th Cir. 1999) ("[T]he construction of language in an insurance policy, according to Wisconsin law (which the parties agree applies in this case) is a question of law, appropriately disposed of on a summary judgment motion."). There is no genuine dispute as to any material fact. And given the material facts, Advance Cable clearly is entitled to judgment as a matter of law.

## I.  The Hail Damage Is a Direct Physical Loss Covered Under the Policy.

The Policy was issued for delivery in Wisconsin. (PFOF 13.) Therefore, the Policy's construction is governed by Wisconsin law. *United States v. Thorson*, 300 F. Supp. 2d 828, 833 (W.D. Wis. 2003).

Under Wisconsin law, a claim for coverage under an insurance policy gives rise to a shifting burden of proof. *Kozlik v. Gulf Ins. Co.*, 2003 WI App 251, ¶ 8, 268 Wis. 2d 491, 673 N.W.2d 343 (citing *Glassner v. Detroit Fire & Marine Ins. Co.*, 23 Wis. 2d 532, 536, 127 N.W.2d 761 (1964)). The policyholder initially bears the burden to show that the loss falls within the policy's broad grant of coverage. *Id.* If the policyholder carries that burden, the insurance company then bears the burden to show that the loss falls within the policy's exclusions or limitations. *Id.*

Under Wisconsin law, a court should construe an insurance policy to mean what a reasonable person in the position of the policyholder would understand it to mean. *General Cas. Co. of Wisconsin v. Hills*, 209 Wis. 2d 167, 175, 561 N.W.2d 718 (1997). It should construe policy provisions to give reasonable meaning to each provision,

rejecting any interpretation that renders any provision surplus or leads to unfair, unreasonable, or absurd results. *Wausau Joint Venture v. Redevelopment Auth.*, 118 Wis. 2d 50, 58, 347 N.W.2d 604 (Ct. App. 1984). And it should construe any ambiguity in that meaning *against the insurance company. Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 51, 255 Wis. 2d 61, 647 N.W.2d 223. As the Wisconsin Supreme Court has held:

> Under the doctrine of *contra proferentem* [literally, "against the offeror"]*, ambiguities in a policy's terms are to be resolved in favor of coverage, while coverage exclusion clauses are narrowly construed against the insurer*. The principle underlying the doctrine is straightforward. As the drafter of the insurance policy, an insurer has the opportunity to employ expressive exactitude in order to avoid a misunderstanding of the policy's terms. Because the insurer is the party best situated to eliminate ambiguity in the policy, the policy's terms should be interpreted as they would be understood from the perspective of a reasonable person in the position of the insured.

*Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 230, 564 N.W.2d 728 (1997) (footnote and citations omitted; emphasis added); *see also Frost v. Whitbeck*, 2002 WI 129, ¶ 19, 257 Wis. 2d 80, 654 N.W.2d 225 ("If terms in an insurance policy are ambiguous, they should be construed against the insurance company that drafted the policy. Thus, ambiguous terms are to be construed in favor of coverage, and exclusions are to be narrowly construed against an insurer." (footnote omitted)).

Under Wisconsin law, Cincinnati Insurance's coverage obligations are not fairly debatable. The Policy unquestionably affords coverage for the hail damage to the Property.

- 8 -

**A. The Hail Damage Is Covered Under the Policy's Broad Grant of Coverage.**

To trigger the Policy's broad grant of coverage, a loss must include three elements: (1) "direct physical 'loss'"; (2) "to Covered Property at the 'premises'"; (3) "caused by or resulting from any Covered Cause of Loss." (PFOF 15.) The hail damage to the Property includes all of these elements.

**1.  The Hail Damage Is Direct Physical Loss.**

As an initial matter, the hail damage is "direct physical 'loss'." "Direct" means "[h]aving no intervening persons, conditions, or agencies; immediate." *American Heritage Dictionary of the English Language* (5th ed. 2011) (citing usage examples: "direct contact; direct sunlight"); *see also MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 115 Cal. Rptr. 3d 27, 37-38 (Cal. Ct. App. 2010) (construing "direct physical loss"); *Free Merriam-Webster Dictionary*, http://www.merriam-webster.com (last visited July 25, 2013) (defining "direct": "stemming immediately from a source <direct result>"; "characterized by a close logical, causal, or consequential relationship <direct evidence>").[3] Here, there was an immediate, non-incidental causal relationship between the hail and the damage to the Property. The hail struck the Property. The hail damaged the Property. There were no intervening persons, conditions, or agencies. (PFOF 22-23.)

---

[3] As indicated above, a court should construe terms in an insurance policy to mean what a reasonable person in the position of the policyholder would understand them to mean—to attribute to terms in an insurance policy "their common and ordinary meaning which they have in the mind[ ] of the average layperson." *Weimer v. Country Mut. Ins. Co.*, 216 Wis. 2d 705, 722, 575 N.W.2d 466 (1998) (quotations omitted). To that end, the court should look to a recognized non-legal dictionary to define terms not defined in the policy. *Id.* at 722-23.

"Physical" means "[o]f or relating to material things." *American Heritage Dictionary of the English Language* (5th ed. 2011) (citing usage examples: "a wall that formed a physical barrier; the physical environment"); *see also Sullivan v. Standard Fire Ins. Co.*, No. 515, 2007, 2008 WL 361141, at *3 (Del. Feb. 11, 2008) (construing "direct physical loss"); *Free Merriam-Webster Dictionary*, http://www.merriam-webster.com (last visited July 25, 2013) (defining "physical": "having material existence: perceptible especially through the senses and subject to the laws of nature <everything physical is measured by weight, motion and resistance –Thomas De Quincey>"; "of or relating to material things"). Here, even assuming the hail damage is precisely as Cincinnati Insurance describes it, there is perceptible "hail impact denting" of material things—specifically, the metal equipment and surfaces of the roof of the Property. (PFOF 23.)

"Loss," the only term in the phrase "direct physical 'loss'" defined in the Policy, means "accidental loss or damage." (PFOF 16.) Here, the hail damage was unexpected and unintended and, thus, accidental. And the hail damage is loss or damage, even if purely "cosmetic" loss or damage. *See Cincinnati Ins. Co. v. Heresite Protective Coatings, Inc.*, No. 07-C-648, 2008 WL 110501, at *4 (E.D. Wis. Jan. 8, 2008) (rejecting Cincinnati Insurance and its present counsel's argument that deteriorating cooling cables in an HVAC system do not constitute "physical injury to tangible property": "[T]o the average, ordinary person, tangible property suffers a physical injury when the property is altered in appearance, shape, color or in the other material dimension." (quotations omitted)); *MRI Healthcare*, 115 Cal.

Rptr. 3d at 38 (construing "direct physical loss": "For loss to be covered, there must be a distinct, demonstrable, physical alteration of the property." (quotations omitted)).

Given the circumstances, Cincinnati Insurance cannot reasonably dispute that the hail damage is "direct physical 'loss'."[4]

### 2. The Hail Damage Is to Covered Property at the Premises.

As an additional matter, the hail damage is "to Covered Property at the 'premises'." As indicated above, the Policy defines "Covered Property" as follows:

> [T]he following types of property for which a Limit of Insurance is shown in the Declarations:
>
> a.  Building
>
> Building, means a building or structure described in the Declarations . . . .

(PFOF 17.) The "types of property for which a Limit of Insurance is shown in the Declarations" includes "blanket building" coverage. (PFOF 18.) Thus, "Covered Property" includes "buildings" and "structures."

As further indicated above, the Policy defines "premises" as follows:

> [T]he Location of Premises described in the Declarations.

(PFOF 19.) The "Location of Premises described in the Declarations" (which in turn refers to a "Schedule of Locations," form IA 904) includes:

> 2113 EAGLE DR
> MIDDLETON, WI 53562-2551

(PFOF 20.) Thus, "premises" includes the physical location of the Property.

---

[4] Cincinnati Insurance's arguments do not truly dispute the *existence* of the direct physical loss; rather, they dispute the *severity* of the direct physical loss. The former issue pertains to coverage, the issue at hand. The latter issue pertains to damages, an issue for trial.

Given the circumstances, Cincinnati Insurance has not disputed, and cannot reasonably dispute, that the hail damage is "to Covered Property at the 'premises'."

### 3.  The Hail Damage Was Caused by a Covered Cause of Loss.

As a final matter, the hail damage was "caused by or resulting from [a] Covered Cause of Loss." As reflected in the Policy's definition of "Covered Cause of Loss," the Policy is an "all risk" insurance policy:

> Covered Cause of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the "loss" is:
>
> (1) Excluded in SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions; or
>
> (2) Limited in SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations . . . .

(PFOF 21.) That is, the Policy "is an insurance policy where *all risks are covered unless clearly and specifically excluded." Dawson Farms, L.L.C. v. Millers Mut. Fire Ins. Co.*, 794 So. 2d 949, 951 (La. Ct. App. 2001) (emphasis added); *see also Adams Arapahoe Joint Sch. Dist. No. 28-J v. Continental Ins. Co.*, 891 F.2d 772, 774 (10th Cir. 1989) ("An all-risk insurance policy covers any fortuitous loss not resulting from an excluded risk or from fraud by the insured."); *Fire Ins. Exch. v. Superior Court*, 10 Cal. Rptr. 3d 617, 632 n.13 (Cal. Ct. App. 2004) ("An "all-risk" policy is one "that covers all perils generally and without enumeration except those specifically excepted, as opposed to the typical policy which specifies both included and excluded perils."); *Steamboat Dev. Corp. v. Bacjac Indus., Inc.*, 701 P.2d 127, 128 (Colo. Ct. App. 1985) ("An 'all risk' policy is a special type of coverage extending to risks not usually covered under other insurance, and recovery is allowed thereunder for all losses, other than those resulting from a willful or fraudulent act

of the insured, unless the policy contains a specific provision expressly excluding a particular loss from coverage."); *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d. 1082, 1085 (Fla. 2005) ("The specific type of insurance policy involved in this case is . . . an all-risk policy. Unless the policy expressly excludes the loss from coverage, this type of policy provides coverage for all fortuitous loss or damage other than that resulting from willful misconduct or fraudulent acts.").

Under the Policy's definition of "Covered Cause of Loss," Advance Cable initially bears the burden to show that the hail damage was caused by a "risk of direct physical loss"; Cincinnati Insurance then bears the burden to show that the loss clearly and specifically is excluded under the "SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions" or "SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations." *Kozlik*, 2003 WI App 251 at ¶ 8. As discussed above, Advance Cable has carried its burden. As discussed below, Cincinnati Insurance cannot carry its burden.

**B. The Hail Damage Is Not Excluded Under the Policy's Exclusions or Limitations.**

In an effort to sidestep its coverage obligations, Cincinnati Insurance argues that the hail damage to the Property is excluded under two exclusions or limitations. However, the "exclusions" or "limitations" on which Cincinnati Insurance's arguments rely appear *nowhere* in the Policy or the law.

First, Cincinnati Insurance argues that it owes no duty to indemnify Advance Cable with respect to the hail damage because the damage is "cosmetic," not "structural." But contrary to Cincinnati Insurance's argument, the Policy does not

distinguish between direct physical loss that is "cosmetic" and direct physical loss

that is "structural," much less define what "cosmetic" and "structural" may mean.[5]

As one of the contributors to the Policy's "Commercial Property Coverage Part,"

the American Association of Insurance Services, Inc., recently acknowledged:

> In some cases, the [wind and hail] "damage" affects only the
> appearance of the property, with no loss of functionality of a
> building's exterior components. The damage often is undetectable to
> the untrained human eye.
>         . . .
>
> For insurers, *standard property forms do not distinguish between
> physical damage that affects the function of insured property, and
> physical damage that affects only the property's appearance.*
>
> Any evidence of damage from an insured peril, no matter how slight,
> raises the possibility of a claim that usually can't be denied.

(DN 27-2:2 (emphasis added); *see also, e.g.*, DN 27-3:2-4.)[6] *Accord, e.g., Murray v.

State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W. Va. 1998) ("'Direct physical loss'

provisions require only that a covered property be injured, not destroyed. *Direct

physical loss also may exist in the absence of structural damage to the insured

property.*" (quoting *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296,

300 (Minn. Ct. App. 1997) (emphasis added)). While Cincinnati Insurance may wish

in hindsight that the Policy included some exclusion or limitation providing

otherwise, the fact remains that it does not. *Nothing* in the Policy excludes coverage

for a direct physical loss simply because that loss may not cause a structure to fail

---

[5] Cincinnati Insurance apparently assumes that "cosmetic" and "structural" mean what its "new optional" "Coverage Limitations for Roofs and Roof Surfaces" endorsement defines those terms to mean. Again, that endorsement is not part of the Policy. (PFOF 27.) However, in defining "cosmetic" and "structural," the endorsement suggests that in the absence of those insurance company-created definitions, a reasonable policyholder would understand the terms to be ambiguous or to mean something other than what Cincinnati Insurance wants them to mean.

[6] A footer running throughout the Policy's "Commercial Property Coverage Part" expressly acknowledges the American Association of Insurance Services, Inc.'s contributions to that form.

or fall. Rather, the Policy unambiguously covers direct physical loss regardless of whether such loss is "cosmetic" or "structural."

Second, Cincinnati Insurance argues that it owes no duty to indemnify Advance Cable with respect to the hail damage because the damage is not visible from ground level. But contrary to Cincinnati Insurance's argument, the Policy does not distinguish coverage between direct physical loss that is visible from ground level and direct physical loss that is not visible from ground level, much less define what "ground level" may mean.[7]

As courts repeatedly have held with respect to "direct physical loss" provisions, such provisions cover even latent losses. In other words, such provisions cover losses *irrespective of whether the losses are visible at all*, be it from ground level or otherwise. *See, e.g.*, *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 809-10 (7th Cir. 2012) (holding that "direct physical loss" includes latent water and mold damage to a structure's inner walls); *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 39-40 (Colo. 1968) (holding that "direct physical loss" includes contamination by odors from gasoline); *Sullivan*, 2008 WL 361141, at *3 (holding

---

[7] Cincinnati Insurance's argument begs the question: *What does "ground level" mean?* For example, is ground level calculated on an objective basis (say, from the height of an "average" person in the United States—roughly 5' 9" for a male, roughly 5' 4" for a female) or on a subjective basis (which varies from less than 2' 0" for the world's shortest adult to more than 8' 0" for the world's tallest adult)? Is ground level calculated at a particular distance from a structure (a shorter distance may permit less visibility of the structure)? Or is ground level calculated at a particular elevation near a structure (say, from a nearby hole or hill)? And what about underground losses, which rarely are visible from ground level (say, damage to a foundation, basement, or storage tank)? Even if the Policy distinguished between direct physical loss that is visible from ground level and direct physical loss that is not visible from ground level, the term "ground level" would give rise to ambiguity and absurdity—two results this Court should not permit. *See Patrick v. Head of the Lakes Coop. Elec. Ass'n*, 98 Wis. 2d 66, 69, 295 N.W.2d 205 (Ct. App. 1980) ("The words used in an insurance contract should be given their common everyday meaning and should be interpreted reasonably so as to avoid absurd results. . . . [T]here is a public policy in Wisconsin against the avoidance of coverage by an insurer, and the reasonable expectations of coverage by an insured should be honored.").

that "direct physical loss" includes contamination by mold spores and associated bacteria "even though they are not tangible or perceptible by the naked eye"); *Sentinel Mgmt.*, 563 N.W.2d at 300-01 (holding that "direct physical loss" includes contamination by asbestos "[a]lthough asbestos contamination does not result in tangible injury to the physical structure of a building"); *Farmers Ins. Co. of Oregon v. Trutanich*, 858 P.2d 1332, 1335-36 (Or. Ct. App. 1993) (holding that "direct physical loss" includes contamination by odors from methamphetamine "cooking"). Again, while Cincinnati Insurance may wish in hindsight that the Policy included some exclusion or limitation providing otherwise, the fact remains that it does not. *Nothing* in the Policy excludes coverage for a direct physical loss simply because that loss may not be readily observable without the aid of a staircase or ladder. Rather, the Policy unambiguously covers direct physical loss regardless of whether such loss is visible from ground level or not visible from ground level.

In short, Cincinnati Insurance's arguments are a wholly unsupported effort to retroactively graft an "In Our (Patently Biased) Opinion, the Damage Just Ain't That Bad" exclusion or limitation to the Policy. Irrespective of Cincinnati Insurance's arguments, the governing facts and law are clear that the hail damage to the Property is a direct physical loss covered under the Policy.

## II. Cincinnati Insurance *Knows* the Hail Damage Is a Direct Physical Loss Covered Under the Policy.

Despite its arguments, Cincinnati Insurance *knows* that the plain text of the Policy provides coverage for the hail damage to the Property—regardless of whether such damage is "cosmetic" or "structural," regardless of whether such damage is

visible from ground level or not visible from ground level. Nearly two years *after* the hail storm, Cincinnati Insurance filed with the Insurance Commissioner a request for approval of its "new optional" "Coverage Limitations for Roofs and Roof Surfaces" endorsement. (PFOF 24-25.) As reflected in the plain text of that endorsement, Cincinnati Insurance clearly intends the endorsement to limit its "Commercial Property Coverage Part" form precisely as it presently argues the form already is limited. But if the form already were so limited, the endorsement would be wholly superfluous. *Accord American Girl*, 2004 WI 2 at ¶ 47 ("If, as . . . [the insurance company] contends, losses actionable in contract are never CGL 'occurrences' for purposes of the initial coverage grant, then the business risk exclusions are entirely unnecessary.").[8]

To be sure, Cincinnati Insurance's "Coverage Limitations for Roofs and Roof Surfaces" endorsement someday may exclude what Cincinnati Insurance's "Commercial Property Coverage Part" form presently covers—direct physical loss such as that at issue. However, the endorsement is *not* part of the Policy.

---

[8] Although a court cannot rely upon extrinsic evidence to determine whether an insurance policy provision is ambiguous, it can rely upon extrinsic evidence to confirm that an insurance policy provision is *un*ambiguous. *See Guenther v. City of Onalaska*, 223 Wis. 2d 206, 215-16, 588 N.W.2d 375 (Ct. App. 1998) (examining the drafting history of a commercial general liability insurance policy pollution exclusion in confirming coverage); *Beahm v. Pautsch*, 180 Wis. 2d 574, 582-84, 510 N.W.2d 702 (Ct. App. 1993) (examining the drafting history of a commercial general liability insurance policy pollution exclusion in confirming coverage); *cf. American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 71, 673 N.W.2d 65, 268 Wis. 2d 16 ("For whatever reason, the industry chose to add the new exception to the business risk exclusion in 1986. We may not ignore that language when interpreting case law decided before and after the addition. To do so would render the new language superfluous." (quotations omitted)); *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 51, 271 Wis. 2d 633, 681 N.W.2d 110 ("[A]s a general matter, legislative history need not be and is not consulted except to resolve an ambiguity in the statutory language, although legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation.").

(PFOF 27.) Consequently, the endorsement underscores that Cincinnati Insurance's arguments are baseless—and Cincinnati Insurance *knows* as much.

## CONCLUSION

For the reasons set forth above, Advance Cable respectfully requests that this Court enter an order for partial summary judgment declaring that the Policy unambiguously affords coverage for the hail damage.

Dated July 31, 2013.

**HALLOIN & MURDOCK, S.C.**
Attorneys for the Plaintiffs

s/ Charles David Schmidt
Anthony K. Murdock
Wis. State Bar No. 1054531
Charles David Schmidt
Wis. State Bar No. 1030914

**HALLOIN & MURDOCK, S.C.**
839 North Jefferson Street
Fifth Floor
Milwaukee, Wisconsin 53202
p  414-732-2424
f  414-732-2422
cschmidt@halloinmurdock.com
amurdock@halloinmurdock.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2013, I electronically filed the foregoing document with the Clerk of the Court using the ECF system and that the foregoing document is available on the ECF system for viewing and downloading. The ECF system will send a notice of electronic filing to the following persons:

*Counsel for the Defendant:*
Mark W. Rattan, Esq.
Brendan D. Corcoran, Esq.
Litchfield Cavo, LLP
13400 Bishops Ln Ste 290
Brookfield, WI 53211

s/ Charles David Schmidt
Charles David Schmidt

S:\Clients\Advance Cable\Advance Cable (13-CV-229)\Pleadings\Plaintiffs' Brief in Support of Their Motion for Partial Summary Judgment.docx