UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

ADVANCE CABLE COMPANY, LLC and
PINEHURST COMMERCIAL INVESTMENTS, LLC,

      Plaintiffs,

v.                                                 Case No. 13-cv-229-wmc

THE CINCINNATI INSURANCE COMPANY,

      Defendant.

---

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

## ARGUMENT

Even assuming the hail damage to the Property is precisely as Cincinnati Insurance describes it, the Policy unambiguously affords coverage for that damage.

**I. The Hail Damage to the Property Constitutes "Physical Loss" Under the Policy's Broad Grant of Coverage.**

It is undisputed that the Policy's construction is governed by Wisconsin law. Under Wisconsin law, this Court should construe terms used in the Policy to mean what a reasonable person in the position of the policyholder would understand them to mean. *General Cas. Co. of Wisconsin v. Hills*, 209 Wis. 2d 167, 175, 561 N.W.2d 718 (1997); *see also Handal v. American Farmers Mut. Cas. Co.*, 79 Wis. 2d 67, 77, 255 N.W.2d 903 (1977) ("Contracts of insurance should not be construed through the magnifying eye of a technical lawyer, but rather from the standpoint of what an ordinary man [or woman] would believe the contract to mean."). To that end, this Court should construe terms used in the Policy, but not

defined in the Policy, using their common and ordinary meanings, as defined in a recognized non-legal dictionary. *Bethke v. Auto-Owners Ins. Co.*, 2013 WI 16, ¶ 20, 345 Wis. 2d 533, 825 N.W.2d 482; *Weimer v. Country Mut. Ins. Co.*, 216 Wis. 2d 705, 722-23, 575 N.W.2d 466 (1998). Applying this law, it is clear the hail damage to the Property constitutes "physical loss" under the Policy's broad grant of coverage.[1]

As explained in Advance Cable's initial brief, the dictionary definition of "physical" is "[o]f or relating to material things." *Merriam-Webster Dictionary*, http://www.merriam-webster.com (last visited September 5, 2013) (further defining "physical": "having material existence: perceptible especially through the senses and subject to the laws of nature <everything physical is measured by weight, motion and resistance –Thomas De Quincey>").

As further explained in Advance Cable's initial brief, the Policy definition of "loss" is "accidental loss or damage." (PFOF 16.) The dictionary definition of "damage" is "loss or harm resulting from injury to person, property, or reputation." *Merriam-Webster Dictionary*, http://www.merriam-webster.com (last visited September 5, 2013).

Applying these definitions, the United States District Court for the Eastern District of Wisconsin recently advised Cincinnati Insurance and its present counsel:

> [T]o the average, ordinary person, tangible property suffers a physical injury when the property is altered in appearance, shape, color or in the other material dimension.

---

[1] Cincinnati Insurance does not dispute that the hail damage to the Property satisfies the "direct" and "to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss" aspects of the Policy's broad grant of coverage.

*Cincinnati Ins. Co. v. Heresite Protective Coatings, Inc.*, No. 07-C-648, 2008 WL 110501, at *4 (E.D. Wis. Jan. 8, 2008) (rejecting Cincinnati Insurance and its present counsel's argument that deteriorating cooling cables in an HVAC system do not constitute "physical injury to tangible property") (quotations omitted); *see also General Cas. Co. of Wis. v. Rainbow Insulators, Inc.*, 2011 WI App 58, ¶ 14, 332 Wis. 2d 804, 798 N.W.2d 320 (unpublished decision) (holding the same); *Sullivan v. Standard Fire Ins. Co.*, No. 515, 2007, 2008 WL 361141, at *3 (Del. Feb. 11, 2008) (unpublished decision) (holding the same); 9A Steven Plitt *et al.*, *Couch on Insurance* § 129:6 (3d ed. updated 2012) ("[P]roperty suffers physical, tangible injury when the property is altered in appearance, shape, color or in some other material dimension.").[2]

In this case, the hail damage to the Property unquestionably falls within these definitions. Cincinnati Insurance's "expert" described that damage as follows:

> Metal roof panel denting characteristic of hail impact was found on [the Property] . . . . Dents related to hail impact varied in size from barely discernible to approximately 1" in 1 [sic] diameter. Hail impact denting of metal heat stack caps and metal coping was also observed.

---

[2] Cincinnati Insurance may quibble that *Heresite*, *Rainbow*, and the numerous other cases with the same holding listed in *Couch on Insurance* addressed the definition of "physical *injury*," not "physical *loss*" or "physical *damage*." However, by dictionary definition, "injury," "loss," and "damage" are synonymous. *See Merriam-Webster Dictionary*, http://www.merriam-webster.com (last visited September 5, 2013) (defining "injury": "hurt, damage, or loss sustained").

Further, Cincinnati Insurance may quibble that ISO's and AAIS's (*i.e.*, the drafters of the Policy's "Commercial Property Coverage Part") interpretations of standard commercial property coverage forms (*see, e.g.*, DN 27-2:2; DN 27-3:2-4) are not binding authority. However, those interpretations nevertheless accord with the dictionary definitions of "physical" and "damage." Therefore, those interpretations nevertheless beg the question: If the drafters interpret the Policy in accordance with the dictionary definitions of "physical" and "damage" and, therefore, in accordance with *Heresite*, *Rainbow*, and the numerous other cases with the same holding listed in *Couch on Insurance*, why should a policyholder do otherwise?

(PFOF 23.)[3] Such damage is a perceptible alteration (denting) of tangible property (metal roof panels, caps, and coping). In other words, such damage is both "physical" and "damage" within the common and ordinary meanings of those terms.[4]

Remarkably, Cincinnati Insurance does not dispute that the hail damage to the Property is both "physical" and "damage" within the terms' common and ordinary meanings, as defined in a recognized non-legal dictionary.[5] Rather, Cincinnati Insurance invites this Court to rewrite the governing law and facts to suit its ever-

---

[3] "When considering cross motions for summary judgment, the court must consider each motion individually, drawing inferences against each movant, in turn, to determine if that party has satisfied the summary judgment standard." *Zeman v. Office & Prof'l Emps. Int'l Union Local 35*, 91 F. Supp. 2d 1247, 1248 (E.D. Wis. 2000) (citing *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). Advance Cable files this brief in support of its motion for summary judgment; this brief construes all facts, and all reasonable inferences that can be drawn from those facts, in the light most favorable to Cincinnati Insurance—for example, this brief assumes that the hail did not cause structural damage or deterioration of the metal surfaces of the Property's roof. Advance Cable will file a separate brief in opposition to Cincinnati Insurance's motion for summary judgment; that brief will construe all facts, and all reasonable inferences that can be drawn from those facts, in the light most favorable to Advance Cable—for example, that brief (and the supporting materials) will show that the hail damage in fact did cause structural damage and deterioration of the metal surfaces of the Property's roof.

[4] As *Couch on Insurance* explains:

> As with any insurance, property insurance coverage is "triggered" by some threshold concept of injury to the insured property. . . . Under most coverages, . . . the policy specifically ties the insurer's liability to the covered peril having some specific effect on the property. In modern policies, especially of the all-risk type, this trigger is frequently "physical loss or damage," but may be any of several variants focusing on "injury," "damage," and the like.
> . . .
> *There is little question that this threshold has been met when an item of tangible property has been physically altered* by perils like fire or water.

10A Plitt, *supra*, at § 148:46 (emphasis added).

[5] Cincinnati Insurance's failure to address *Heresite* is particularly remarkable given that in that case, the Court expressly rejected an argument by Cincinnati Insurance and its present counsel substantively identical to the current argument by Cincinnati Insurance and its present counsel.

- 4 -

evolving "construction" of the Policy. Advance Cable respectfully submits that this Court should reject Cincinnati Insurance's invitation.

**A. Cincinnati Insurance Misconstrues the Governing Law.**

Again, it is undisputed that the Policy's construction is governed by Wisconsin law. Under Wisconsin law, this Court should construe terms used in the Policy, but not defined in the Policy, using their common and ordinary meanings, as defined in a recognized non-legal dictionary—not using non-Wisconsin district court decisions applying non-Wisconsin law. Nevertheless, Cincinnati Insurance attempts to cobble together support for its "construction" of the Policy relying exclusively upon two non-Wisconsin district court decisions applying non-Wisconsin law: *Crestview Country Club, Inc. v. St. Paul Guardian Insurance Company*, 321 F. Supp. 2d 260 (D. Mass. 2004); and *Ports of Indiana v. Lexington Insurance Company*, No. 09-cv-854-twp-mjd, 2011 WL 5523419 (S.D. Ind. Nov. 14, 2011) (unpublished decision).

Cincinnati Insurance fails to explain how a reasonable person in the position of the policyholder would have knowledge of, much less have access to, these decisions.[6] Cincinnati Insurance fails to explain why a reasonable person in the position of the policyholder would construe terms used in the Policy not using a dictionary (consistent with Wisconsin law), but rather using these decisions (contrary to Wisconsin law). And perhaps most importantly, Cincinnati Insurance grossly misconstrues these decisions.

---

[6] The issue of the policyholder's knowledge and access is particularly acute with respect to *Ports*, an unpublished nonfinal decision that never has been cited by any court.

### 1. *Crestview* Does Not Support Cincinnati Insurance's Effort to Rewrite the Policy.

Cincinnati Insurance erroneously (and exclusively) relies on *Crestview*, 321 F. Supp. 2d 260, in support of its argument that the hail damage to the Property is not "physical." In *Crestview*, the policyholder suffered "structural" damage to its insured golf course when a wind storm destroyed a large tree along the course colloquially referenced as the "Poltergeist Tree." *Id.* at 262. The insurance company paid the policyholder's claim for the loss of the tree. *Id.* However, the insurance company denied the policyholder's claim for the intangible diminution of value of the golf course (specifically, loss of the golf course's "character, challenge, rating, slope and psychology") without the tree. *Id.* at 262-63. The district court ruled that the intangible diminution of value of the golf course without the tree was not a covered loss because the loss was not "physical":

> In the court's opinion, "physical" must be given its plain meaning— *e.g.*, "material," *see American Heritage Dictionary* (Second College Edition 1982)—and an intangible loss in value of a golf course because of a change in its slope rating, difficulty, etc., does not fit within this meaning. Moreover, in this court's estimation, the "character" of the course is not part of the policy's definition of "golf course grounds."
>
> Several Massachusetts courts, as well as others elsewhere, have interpreted the phrase "direct physical loss" in a similarly narrow way. The theme of these decisions (and others cited in Defendant's memoranda) is as follows: once physical damage is fixed and paid for by the insurer, any diminution in value, income or use is not "physical damage" and, hence, not recoverable under language similar to the clause at issue here.
>
> . . . The only "physical" damage to the . . . [golf course] was the harm to the Poltergeist Tree itself, a claim which has been paid. *Plaintiffs' present claim, in contrast, encompasses work necessary to return the hole not to its former physical appearance, but to the same subjective level of difficulty.*

*Id.* at 264-65 (citations omitted; emphasis added).

Cincinnati Insurance attempts to spin *Crestview* in two respects. It misconstrues *Crestview* in both respects.

First, Cincinnati Insurance cites *Crestview* for the proposition that "physical" means "material" in the sense of "[b]eing both relevant and consequential." *American Heritage Dictionary of the English Language* (5th ed. 2011) (defining "material": definition four). However, the dictionary definition of "physical" cited in *Crestview*, the *same* dictionary definition of "physical" cited in Advance Cable's initial brief and above, is "[o]f or relating to material things: *a wall that formed a physical barrier; the physical environment*." *Id.* (emphasis in original). Under this definition, "physical" means "material" in the sense of "[o]f, relating to, or composed of matter," "[o]f, relating to, or affecting physical well-being," and "[o]f or concerned with the physical as distinct from the intellectual or spiritual." *Id.* (defining "material": definitions one, two, and three). Thus, *Crestview* does not support Cincinnati Insurance's argument that the term "physical" requires some undefined minimum amount or severity of damage to trigger coverage under the Policy. Rather, *Crestview* supports Advance Cable's argument that this Court should construe the Policy using the same dictionary definition of "physical" cited in Advance Cable's initial brief and above. Under that definition, the amount and

severity of damage pertains not to coverage, the issue at hand, but rather to damages, an issue for trial.[7]

Second, Cincinnati Insurance cites *Crestview* for the proposition that "physical" means "not intangible." That proposition is true, but irrelevant. Advance Cable's claim is not for intangible diminution of value of the Property (for example, loss of the Property's subjective "character"), but rather is for tangible damage to the Property. *Crestview* provides that such a claim *is* a covered "physical loss." *See Crestview*, 321 F. Supp. 2d at 265 ("The only "physical" damage to the . . . [golf course] was the harm to the Poltergeist Tree itself, a claim which has been paid. *Plaintiffs' present claim, in contrast, encompasses work necessary to return the hole not to its former physical appearance, but to the same subjective level of difficulty*.").

In short, *Crestview* lends no support to Cincinnati Insurance's arguments. To the contrary, *Crestview* undermines Cincinnati Insurance's effort to retrospectively rewrite the Policy.

---

[7] Rejecting an argument by an insurance company substantively identical to the current argument by Cincinnati Insurance, the New Hampshire Supreme Court held:

> [The insurance company] essentially argues that, despite the bracing, bolts and other supports affixed to the purlins to remedy the bowing, any alteration of the purlins is so minimal that it should not be considered property damage. *However, as the plaintiff correctly noted, the policy does not prescribe a minimum level of property damage necessary to initiate coverage.* The policy simply defines property damage, in pertinent part, as "physical injury to tangible property," without limitation or restriction. We read this definition as would a reasonable person in the position of the insured, and conclude that it does not require a minimum measure of damage to fall within the scope of coverage.

*Webster v. Acacia Ins. Co.*, 934 A.2d 567, 572 (N.H. 2007) (emphasis added).

## 2. *Ports* Does Not Support Cincinnati Insurance's Effort to Rewrite the Policy.

Cincinnati Insurance erroneously (and exclusively) relies on *Ports*, 2011 WL 5523419, in support of its argument that the hail damage to the Property is not "loss." In *Ports*, the policyholder suffered "structural" damage to its insured dock wall when water and mud levels in Lake Michigan dropped below design levels. *Id.* at *1. The insurance company paid the policyholder's claim for all "structural" damage accompanied by "cosmetic" damage (*i.e.*, all patent damage)— all damage to "an area near Bollard # 7" of the dock. *Id.* at *2. However, the insurance company denied the policyholder's claims for all "structural" damage unaccompanied by "cosmetic" damage (*i.e.*, all latent damage)—all other damage to the dock. *Id.* The district court ruled that whether and to what extent any "structural" damage unaccompanied by "cosmetic" damage actually existed presented a classic "battle of the experts" issue of fact for trial:

> Here, the insured's property is a dock wall that is largely underwater. Accordingly, the cosmetics and aesthetics of the property are not at issue (other than the apron area near Bollard # 7 which . . . [the insurance company] agreed was covered). Whether the dock wall is damaged is best assessed by determining if there is a quantifiable loss in the property's usefulness or in its function for normal purposes. *Cf. Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.,* 311 F.3d 226, 235–36 (3d Cir.2002); *see also* 10A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 148:46, p. 148-80 (2005). . . . [The insurance company] has offered evidence to support a conclusion that, other than the section of the dock near Bollard # 7, the dock did not suffer a loss to its usefulness or its ability to serve as a dock. . . . This evidence is sufficient to create a question of material fact as to whether the dock wall, outside of the section near Bollard # 7, suffered direct physical damage or loss.
>
> *To clarify, the Court is not conflating usability with physical damage.* As anyone who has driven a beat-up jalopy knows, a damaged piece of property can often still be used. However, where the damage is said to have reduced the ability of the property to safely function as a dock, and the insurance policy at issue excludes damage resulting

> from ". . . gradual deterioration, ordinary wear and tear, unless a peril otherwise excluded ensues . . . " and "[n]ormal settling, or shrinkage of walls . . . unless a perils [sic] not otherwise excluded ensues . . . ," the court sees no ambiguity in the contractual intent. . . . [The policyholder] needs to show that the dock wall suffered a fortuitous and cognizable reduction in its usefulness or that its ability to safely serve its purpose as a dock was compromised.

*Id.* at *10 (emphasis added).

Cincinnati Insurance cites *Ports* for the proposition that purely "cosmetic" damage must be readily visible to constitute "loss." However, Cincinnati Insurance misreads *Ports*.[8]

Neither *Crestview* nor *Ports* involved *any* purely "cosmetic" damage. *Crestview* involved "structural" damage (which was covered) and intangible diminution of value damage (which was not covered). *Crestview*, 321 F. Supp. 2d at 262-63. *Ports* involved "structural" damage accompanied by "cosmetic" damage (which was covered) and "structural" damage unaccompanied by "cosmetic" damage (which potentially was covered). *Ports*, 2011 WL 5523419, at *2. Hence, it curious that Cincinnati Insurance attempts to distinguish authorities cited in Advance Cable's initial brief "because they are not even cosmetic damage cases." (DN 50:22.) Cincinnati Insurance's entire defense is premised upon two cases, neither of which is a "cosmetic damage case."

Attempting to gloss over this fact, Cincinnati Insurance pulls two lines of *Ports* from their context in an effort to support its novel proposition that purely "cosmetic"

---

[8] As indicated above, *Ports* never has been cited by any court, much less has been cited by any court for the groundbreaking precedent Cincinnati Insurance advocates.

damage must be readily visible (or perhaps more accurately, frequently viewed) to constitute "loss":

> Here, the insured's property is a dock wall that is largely underwater. Accordingly, the cosmetics and aesthetics of the property are not at issue . . . .

*Id.* at *10. However, "the cosmetics and aesthetics of the property [we]re not at issue" in *Ports* because the policyholder in *Ports* never made a claim for any purely "cosmetic" damage—not because any such damage was underwater or otherwise not readily visible.[9]

In short, *Ports* lends no support to Cincinnati Insurance's arguments. At best for Cincinnati Insurance, *Ports* simply is irrelevant.

### 3. Even Assuming *Crestview* and *Ports* Supported Cincinnati Insurance's Effort to Rewrite the Policy, Advance Cable Still Would Be Entitled to Coverage for the Hail Damage to the Property.

Under Wisconsin law, an insurance policy is ambiguous only if it is susceptible to more than one *reasonable* meaning. *Johnson Controls, Inc. v. London Market*, 2010 WI 52, ¶ 26, 325 Wis. 2d 176, 784 N.W.2d 579. An insurance policy is not

---

[9] Given the nature of the policyholder's claim, *Ports* turned to *Port Authority of New York and New Jersey v. Affiliated FM Insurance* Company, 311 F.3d 226, 235 (3d Cir. 2002), for guidance regarding the heightened threshold applicable to "structural" damage unaccompanied by "cosmetic" damage (*i.e.*, latent damage):

> *In ordinary parlance and widely accepted definition, physical damage to property means "a distinct, demonstrable, and physical alteration" of its structure.* 10 *Couch on Insurance* § 148:46 (3d ed. 1998). *Fire, water, smoke and impact from another object are typical examples of physical damage from an outside source that may demonstrably alter the components of a building and trigger coverage.* Physical damage to a building as an entity by sources unnoticeable to the naked eye must meet a higher threshold.

(Emphasis added). *Port Authority* (and the section of *Couch on Insurance* cited in *Port Authority*, as quoted in footnote 4 above) directly supports Advance Cable's understanding of the terms "physical" and "damage."

ambiguous "simply because one party has offered a remotely possible second interpretation." *Kosieradzki v. Mathys*, 2002 WI App 191, ¶ 7 n.2, 256 Wis. 2d 839, 649 N.W.2d 717 (quotations omitted)

When an insurance policy is unambiguous, this Court should construe it as it stands. *Town of Neenah Sanitary Dist. No. 2 v. City of Neenah*, 2002 WI App 155, ¶18, 256 Wis. 2d 296, 647 N.W.2d 913. When an insurance policy is ambiguous, this Court should construe it *against the insurance company*. *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 51, 255 Wis. 2d 61, 647 N.W.2d 223.

Applying this law, Cincinnati Insurance cannot reasonably contend that Advance Cable is not entitled to coverage for the hail damage to the Property. Even assuming Cincinnati Insurance could explain how a reasonable person in the position of the policyholder would have knowledge of and access to *Crestview* and *Ports*, and even assuming Cincinnati Insurance could explain why a reasonable person in the position of the policyholder would construe terms used in the Policy not using a dictionary, but rather using *Crestview* and *Ports*, Cincinnati Insurance's "construction" of the Policy based on its misconstruction of *Crestview* and *Ports* at best offers only "a remotely possible second interpretation." And even assuming that Cincinnati Insurance's "construction" of the Policy based on its misconstruction of *Crestview* and *Ports* offered something more than "a remotely possible second interpretation," that "construction" of the Policy at best renders the Policy ambiguous. Under any circumstance, Cincinnati Insurance cannot justify its denial of Advance Cable's claim. The Policy should be construed in favor of coverage.

**B. Cincinnati Insurance Misconstrues the Governing Facts.**

As discussed in Advance Cable's initial brief, if Cincinnati Insurance's "Commercial Property Coverage Part" already excluded coverage for all purely "cosmetic" damage, Cincinnati Insurance's new "Coverage Limitations for Roofs and Roof Surfaces" endorsement would be meaningless surplus. Apparently now recognizing as much, Cincinnati Insurance concedes that "physical loss" covers *some* purely "cosmetic" damage. Notably, Cincinnati Insurance never defines which such damage is covered and which such damage is uncovered, much less which Policy provision advises the policyholder of any such coverage loopholes. Nevertheless, Cincinnati Insurance suggests that "physical loss" covers purely "cosmetic" damage if that damage is "visible *enough*."

In an effort to squeeze the governing facts into its made-up subjective exclusion, Cincinnati Insurance repeatedly asserts that the hail damage to the Property was "functionally non-existent." (DN 50:19.) To that end, Cincinnati Insurance invokes the philosophical query: If a tree falls in a forest and no one is around to hear it, does it make a sound? In other words, Cincinnati Insurance suggests that the hail damage to the Property does not exist unless someone is looking at it.

Albert Einstein reportedly once responded to this type of absurd query with: "Do you really believe the moon is not there when you are not looking at it?" Apparently, Cincinnati Insurance does.

To accept Cincinnati Insurance's suggestion would render no insurance claim safe from Cincinnati Insurance's made-up subjective exclusion. No matter how many and how long and how hard persons stare at damage, Cincinnati Insurance

always could argue that it was not enough to render the damage "functionally existent" enough to constitute "physical loss."

Despite Cincinnati Insurance's efforts to rewrite the governing facts, Cincinnati Insurance's "expert" (among others) verified the existence of the hail damage to the Property. He viewed the damage. He touched the damage. He measured the damage. And he photographed the damage. (*See generally, e.g.*, DN 24-1.)[10]

The Policy simply does not contain any term limiting coverage based upon the "viewability" of damage. And this Court should reject Cincinnati Insurance's invitation to retroactively graft such a term to the Policy now.[11]

## II. Cincinnati Insurance's Professed Confusion Regarding Application of the Policy's ACV/RCV Limitation Does Not Create a Genuine Issue of Fact or Law.

Additionally, Cincinnati Insurance argues that this Court should not grant summary judgment in favor of Advance Cable because Advance Cable has not established compliance with the Policy's damages limitations—specifically, the limitation determining whether Advance Cable's contract damages should be

---

[10] Cincinnati Insurance repeatedly asserts that it paid Advance Cable's claim to the extent the claim involves vent caps and HVAC fins. But like all other roof components at issue in Advance Cable's claim, those caps and fins are not visible from ground level. Thus, Cincinnati Insurance's assertion begs the question: Why are those components covered under the Policy when similarly situated components are not covered under the Policy? The answer appears the be that from the outset, Cincinnati Insurance never truly believed its "construction" of the Policy, but rather used that construction as a thinly veiled bad-faith basis to negotiate otherwise covered losses.

[11] It is not clear how Cincinnati Insurance believes such a limitation would work. Would damage to Cincinnati Insurance's hypothetical "mint jalopy" (an oxymoron, *see Merriam-Webster Dictionary*, http://www.merriam-webster.com (last visited September 5, 2013) (defining "jalopy": "a dilapidated old vehicle (as an automobile)")) be covered only if it is viewable from ground level? If so, is damage to the roof of the jalopy covered if the jalopy is a car and its roof thus is viewable from ground level, but not covered if the jalopy is a van and its roof thus is not viewable from ground level? Cincinnati Insurance never even attempts to explain how its proposed limitation would address such arbitrary distinctions.

calculated with depreciation, at actual cash value ("ACV"); or without depreciation, at replacement cost value ("RCV"). (*See* DN 42-1:52 (defining actual cash value and replacement cost value).) Cincinnati Insurance's argument fails in three separate respects.[12]

First, contrary to Cincinnati Insurance's argument, the ACV/RCV limitation is not a gateway to coverage, but rather a limit to damages. Regardless of which measure of damages ultimately applies, Cincinnati Insurance will have to pay *either* ACV *or* RCV. There is no circumstance Cincinnati Insurance will have to pay *neither* ACV *nor* RCV.[13]

Second, contrary to Cincinnati Insurance's argument, Cincinnati Insurance bears the burden to show that the ACV/RCV limitation applies. The law is clear that when the policyholder carries its burden to show that a loss falls within a policy's broad grant of coverage, the insurance company then bears the burden to

---

[12] The limitation to which Cincinnati Insurance refers, but fails to quote or cite, provides:

> We will not pay on a replacement cost basis for any "loss":
>
> (1) Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same purpose as the lost or damaged property; and
>
> (2) Unless the repairs or replacement have been completed or at least underway within 2 years following the date of "loss".

(DN 42-1:52.)

[13] The Policy provides that if RCV does not apply, then ACV applies:

> If the Replacement Cost option is shown in the Declarations and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the actual cash value of the building at the time of "loss".

(DN 42-1:47.)

show that the loss falls within the policy's exclusions or limitations—to prove its affirmative defense to coverage. *Jansa v. Milwaukee Auto. Mut. Ins. Co.*, 18 Wis. 2d 145, 150, 118 N.W.2d 149 (1962) (holding that the insurance company bears the burden to show that a limitation within its insurance policy limits how much coverage is available under that policy); *see also Capitol Indem. Corp. v. St. Paul Fire & Marine Ins. Co.*, 357 F. Supp. 399, 410 (W.D. Wis. 1972) (granting summary judgment in favor of a plaintiff on a defendant's affirmative defense: "At trial, the burden of establishing an affirmative defense rests upon the defendant. Therefore, at this point in the proceedings, . . . [the] defendant must establish by affidavit or other evidence that its affirmative defense presents a genuine issue of material fact for trial.").

Third, contrary to Cincinnati Insurance's argument, Cincinnati Insurance cannot carry the burden to show that the ACV/RCV limitation applies because it waived that limitation by denying coverage outright. The law is clear that "a party may not take advantage of a failure of a condition when it has unjustifiably prevented that condition from taking place." *Variance, Inc. v. Losinske*, 71 Wis. 2d 31, 40, 237 N.W.2d 22 (1976); *see also Market Street Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 592 (7th Cir. 1991) ("[A] contracting party cannot be allowed to use his [or her] own breach to gain an advantage by impairing the rights that the contract confers on the other party."). Applying that law, one court succinctly explained:

> When the insurer, in breach of the insurance contract, denies liability for the insured's loss, most courts conclude that such denial may excuse the insured's duty under the repair/replace condition to

> replacement cost coverage. While other theories are sometimes relied upon, most courts frame the issue in terms of the doctrine of prevention. . . .
>
> The doctrine of prevention states that where a promisor prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, the promisor is not relieved of the obligation to perform and may not invoke the other party's nonperformance as a defense when sued upon the contract. In short, under the doctrine of prevention, where a party to a contract is the cause of the failure of the performance of the obligation due him or her, that party cannot in any way take advantage of that failure.

*D & S Realty, Inc. v. Markel Ins. Co.*, 816 N.W.2d 1, 17-18 (Neb. 2012) (citing numerous supporting authorities; quotations and footnotes omitted).

In this case, the Policy defines Cincinnati Insurance's valuation and indemnification obligations as follows:

> In the event of "loss" insured by this Coverage Part, at our option, we [*i.e.*, Cincinnati Insurance] will either:
>
> (1) Pay the value of lost or damaged property;
>
> (2) Pay the cost of repairing or replacing the lost or damaged property;
>
> (3) Take all or any part of the property at an agreed or appraised value; or
>
> (4) Repair, rebuild or replace the property with other property of like kind and quality.
>
> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of SECTION D. LOSS CONDITIONS, 7. Valuation or any applicable provision that amends or supersedes this valuation condition.

(DN 42-1:47.)[14] Despite those obligations, Cincinnati Insurance neither valued nor indemnified Advance Cable's claim. Instead, Cincinnati Insurance chose to outright deny that claim based on its wholly fabricated "In Our (Patently Biased) Opinion,

---

[14] "SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost" expressly supersedes "SECTION D. LOSS CONDITIONS, 7. Valuation." (DN 42-1:52.)

- 17 -

the Damage Just Ain't That Bad" exclusion, thus denying Advance Cable the funds it needed to fully repair the hail damage to the Property. As a result, Cincinnati Insurance should not now be heard to complain that the repair of the hail damage was not "completed . . . within 2 years following the date of 'loss'." (DN 42-1:52.)

Despite Cincinnati Insurance's efforts to forestall summary judgment, the ACV/RCV limitation is a red herring. That limitation pertains not to coverage, the issue at hand, but rather to damages, an issue for trial.

### III. Cincinnati Insurance's Professed Confusion Regarding the Meaning of "Coverage" Does Not Create a Genuine Issue of Fact or Law.

Finally, Cincinnati Insurance argues that this Court should not grant summary judgment in favor of Advance Cable because Advance Cable's request that this Court enter an order for partial summary judgment declaring that the Policy affords coverage for the hail damage is vague. Once again, Cincinnati Insurance apparently cannot distinguish between coverage, the issue at hand, and damages, an issue for trial.

Like Cincinnati Insurance's motion for summary judgment, Advance Cable's motion for summary judgment seeks a determination regarding coverage—a determination regarding "[i]nclusion of a risk under an insurance policy; the risks with the scope of an insurance policy." *Black's Law Dictionary* (9th ed. 2010) (defining "coverage"). And like Cincinnati Insurance's motion for summary judgment, Advance Cable's motion for summary judgment does not seek a determination regarding damages—a determination regarding "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Id.* (defining

"damages"). As such, it defies logic and law for Cincinnati Insurance to suggest that Advance Cable must prove its damages at this point in the proceedings.

In sum, the governing facts and law are clear that this Court should grant partial summary judgment in favor of Advance Cable and against Cincinnati Insurance, declaring that the Policy unambiguously affords coverage for the hail damage to the Property. Damages will come later.

## CONCLUSION

For the reasons set forth in its initial brief and above, Advance Cable respectfully requests that this Court enter an order for partial summary judgment declaring that the Policy unambiguously affords coverage for the hail damage.

Dated September 5, 2013.

**HALLOIN & MURDOCK, S.C.**
Attorneys for the Plaintiffs

s/ Charles David Schmidt
Anthony K. Murdock
Wis. State Bar No. 1054531
Charles David Schmidt
Wis. State Bar No. 1030914

**HALLOIN & MURDOCK, S.C.**
839 North Jefferson Street
Fifth Floor
Milwaukee, Wisconsin 53202
p  414-732-2424
f  414-732-2422
cschmidt@halloinmurdock.com
amurdock@halloinmurdock.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2013, I electronically filed the foregoing document with the Clerk of the Court using the ECF system and that the foregoing document is available on the ECF system for viewing and downloading. The ECF system will send a notice of electronic filing to the following persons:

*Counsel for the Defendant:*
Mark W. Rattan, Esq.
Stephanie L. Dykeman, Esq.
Brendan D. Corcoran, Esq.
Litchfield Cavo, LLP
13400 Bishops Ln Ste 290
Brookfield, WI 53211

s/ Charles David Schmidt
Charles David Schmidt

S:\Clients\Advance Cable\Advance Cable (13-CV-229)\Pleadings\Plaintiffs' Reply Brief in Support of Their Motion for Partial Summary Judgment.docx