IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ADVANCE CABLE COMPANY, LLC, and
PINEHURST COMMERCIAL INVESTMENTS,
LLC,

                  Plaintiffs,                OPINION & ORDER

    v.

                                        13-cv-229-wmc

THE CINCINNATI INSURANCE COMPANY,

                  Defendant.

Plaintiffs Advance Cable Company, LLC ("Advance Cable") and Pinehurst Commercial Investments, LLC ("Pinehurst") allege that defendant The Cincinnati Insurance Company ("Cincinnati Insurance") breached an insurance policy by refusing to provide coverage for denting to the roof of one of its insured properties caused by hail. The court previously found that the policy provides coverage for the denting in question as a matter of law but granted summary judgment to Cincinnati Insurance on plaintiffs' separate claim of bad faith. (*See* Opinion & Order (dkt. #109).) This order addresses various issues raised following that ruling.

Cincinnati Insurance asks the court to dismiss Advance Cable and Pinehurst as plaintiffs and substitute the Welton Family Limited Partnership ("Welton"), on the grounds that Welton is the real party in interest in this suit. (Dkt. #104.) This motion will be denied. In addition, the parties seek clarification of this court's summary judgment order and, in particular, whether this court intended to foreclose all measures of damages other than diminution of value. (Dkt. #117.) The court will grant this request in part, by clarifying that its order on summary judgment was not intended to prescribe a different damages formula than that on which the parties had agreed, but deny the motion in all

other respects.  Finally, Cincinnati Insurance has filed two motions to strike.  (Dkt. ##131, 133.)  The court takes up each of those motions in this opinion as well.

## BACKGROUND

Plaintiffs Advance Cable and Pinehurst are limited liability companies whose owner and sole member is Michael G. Larson, an adult citizen of the state of Wisconsin. Defendant Cincinnati Insurance is a foreign insurance company incorporated under the laws of Ohio, with its principal place of business in Fairfield, Ohio.  This court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Cincinnati Insurance issued Commercial Primary Policy number EPP 003 30 85 / EBA 003 30 85 ("the Policy) for blanket building coverage to Advance Cable, effective from August 1, 2010 until August 1, 2013.  The Policy covered, among other properties, a building at 2113 Eagle Drive ("the Property"), which is the property at the center of this dispute.  Under the Policy, in the event of covered loss, Cincinnati Insurance may:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality.

(Michael G. Larson Aff. Ex. 1 (dkt. #42-1) ECF 47.)

On April 3, 2011, the town of Middleton, Wisconsin was hit by a hailstorm, which caused denting to the roof of the Property as well as to a soft metal vent top and the fins of air conditioning units.  At that time, Advance Cable was the sole owner of the Policy, while

2

Pinehurst was a named insured under the Policy.  Cincinnati Insurance paid for the denting to the vent top and air conditioning units but did not pay for denting to the roof itself.  At some point, Pinehurst filed a claim for that denting with Cincinnati Insurance.

While the claim was pending, Pinehurst sold the Property to Welton Family Limited Partnership ("Welton"), dents and all.  On February 13, 2012, the date of the sale, Pinehurst and Welton entered into a "Roof Provision Addendum," which provides that Welton's offer to purchase is contingent on the following:

> 1.) As noted by buyer's expert upon inspection of the roof there was determined to be significant hail damage, and
>
> 2.) Seller is currently working with Seller's insurance to file a claim for damages, and
>
> 3.) Buyer wishes to pursue the purchase of the property contingent upon Seller continuing to use its best faith and commercially reasonable efforts to obtain a claim for damages, and
>
> 4.) Should Seller receive an amount for the claim of damages, Seller shall transfer any and all such sums to Buyer to repair the damages, and
>
> 5.) Seller agrees to engage Ken Brayton with Target Construction as Seller's consultant to work with the insurance company on receiving the appropriate claim.

(Michael G. Larson Aff. Ex. 1 (dkt. #57-1).)

On April 11, 2012, the date of the closing, Pinehurst and Welton entered into a "Roof Repair Agreement," which provides:

> A. Buyer and Seller entered into a Commercial Offer to Purchase dated February 13, 2012 which was accepted February 20, 2012 (the "Offer") for the property locate[d] at 2101-2113 Eagle Drive, Middleton, Wisconsin (the "Property").

    B. The Offer includes a Roof Provision Addendum which provides a method of addressing the damage to the roof of the Property, but the roof issues have not yet been fully resolved.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1. **Insurance Claim**.  Seller shall continue to work with Target Construction to evaluate and document the hail damage to the roof of the Property.  If not already filed, Seller shall promptly file with Seller's property and casualty insurance company a claim for said hail damage.  Seller shall provide to Buyer a copy of the claim once filed with the insurance company no later than April 30, 2012.  If Seller's claim is denied, Seller shall, in good faith, pursue the denial of claim to ensure that the denial is absolute and final and would not be overturned based on provided additional information requested by the insurance company.  Notwithstanding Seller's efforts to pursue the insurance claim, if Seller's insurance company denies Seller's claim and all appeals thereof, Seller shall have no further obligation with respect to the roof repairs.

2. **Claim Proceeds**.  If Seller's claim is accepted and paid by Seller's insurance company, Seller shall immediately upon receipt of said claim payment, deliver the entire claim payment, less any costs incurred from third parties by Seller, to Buyer to permit Buyer to have the roof repaired.

3. **Failure to Pursue.**  If Seller fails to file an insurance claim for the hail damage then Seller shall pay to Buyer the cost of the roof repair as determined by Target Construction.  If the claim is not filed by April 30, 2012, then Seller shall incur this payment obligation and the payment shall be due to Buyer no later than August 1, 2012.  Notwithstanding this foregoing, if Seller provides Buyer with a copy of the claim, as required herein, on or before April 30, 2012, Seller shall have no payment obligation hereunder.

(Mark W. Rattan Decl. Ex. C (dkt. #108-3).)

    Advance Cable and Pinehurst filed this lawsuit against Cincinnati Insurance on April 2, 2013, alleging separate claims for breach of contract and bad faith.  Both parties moved

4

for summary judgment, and on March 12, 2014, the court ruled that the Policy provided coverage for the claimed denting as a matter of law.  However, the court also dismissed plaintiffs' claim for bad faith because the information before Cincinnati Insurance at the time was that the denting affected neither the structural integrity nor the cosmetics of the roof.  Under the circumstances, the court found that Cincinnati Insurance was not objectively unreasonable in debating its need to pay Advance Cable, even though it should not have based its opposition on a lack of coverage under the Policy.  (*See* Opinion & Order (dkt. #109).)

On April 21, 2014, Cincinnati Insurance moved for clarification, asking whether the court had intended to foreclose all forms of damages except for diminution of value damages and, if so, requested additional time for the parties to find diminution of value experts.  As requested by the parties, the court held a telephonic status conference on April 28, 2014, to establish a briefing schedule on the motion for clarification.

OPINION

## I.  Motion to Dismiss

Federal Rule of Civil Procedure 17 requires that an action "be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  The rule goes on to state that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Fed. R. Civ. P. 17(a)(3).  "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."  *Id.*  To determine a party's standing as the real

party in interest in a diversity action, courts must look to applicable state substantive law --

in this case, the law of Wisconsin. *Am. Nat'l Bank & Trust Co. of Chi. v. Weyerhaeuser Co.*,

692 F.2d 455, 459-60 (7th Cir. 1982).  Where that applicable substantive law confers an

enforceable right on a party, that party is the real party in interest for the right in question.

*See Race v. Hay*, 28 F.R.D. 354, 355 (N.D. Ind. 1961); 4 James Wm. Moore et al., *Moore's*

*Federal Practice* § 17:10[1] (3d ed. 2013) ("If state or federal substantive law confers on one

an enforceable right, that party is a real party in interest with respect to that right or

interest.").

### A.  Pinehurst

Cincinnati Insurance first argues that Pinehurst is no longer the real party in interest

here, because it has assigned its claim to Welton.  In support, it points out that under the

Roof Provision Addendum, Pinehurst is required not only to assert an insurance claim

against Cincinnati Insurance but also to transfer any proceeds from the claim to Welton and

engage Target Construction as a consultant in prosecuting the claim. Furthermore, Larson

testified in his deposition that he is not financially responsible for the prosecution of the

claim; Cincinnati Insurance contends that this justifies an inference that Welton is funding

the litigation, further demonstrating Welton's status as the real party in interest.

Plaintiffs respond that while they may have assigned the right to the *proceeds* of the

claim to Welton, they have not assigned the claim *itself*.  To illustrate this distinction, they

rely on *Edgewood Manor Apartment Homes, LLC v. RSUI Indemnity Co.*, 733 F.3d 761 (7th Cir.

2013).   In *Edgewood Manor*, a hurricane damaged an apartment complex owned by

Edgewood Associates and insured by a policy issued by RSUI.  Southland was the named

6

insured on that policy.  During negotiations over replacement-cost proceeds, Edgewood Associates and Southland entered into an agreement to sell the complex to Gorman & Co., which thereafter assigned its right to purchase the property to Edgewood Manor, a newly-created entity of which Gorman & Co. was the managing partner.  The parties executed an agreement under which Southland retained ownership of the replacement-costs claim but appointed Edgewood Manor as its attorney-in-fact with respect to negotiations with RSUI. Southland also promised to direct proceeds of the replacement-cost claim to an escrow agent; through a series of transactions via other entities, Edgewood Manor would then receive those proceeds.

The Seventh Circuit considered first whether Edgewood Manor had standing to pursue a claim against RSUI.  The court concluded that, while Edgewood Manor may have had *constitutional* standing based on its indirect interest in the monetary proceeds of the replacement-cost claim, it lacked standing under the prudential rule that a litigant cannot sue to enforce the legal rights of another.  *Id.* at 771.  The court further explained that as the named insured, Southland continued to own the replacement-cost insurance claim, and that even though Edgewood Manor had a contractual right to recover *from Southland* some of the replacement-cost claim proceeds, it lacked a legal right to recover *from RSUI* those proceeds.  *Id.* at 771-72.  Accordingly, the Seventh Circuit affirmed the district court's decision to dismiss Edgewood Manor's claim for lack of standing.  *Id.* at 772.

The Seventh Circuit then considered whether Southland retained an insurable interest such that it could enforce its rights under the policy.  Turning to Mississippi law as the applicable substantive law to decide this issue, the court found that an insured must have an insurable interest at the time of contract formation for the insurance contract to be

effective.  *Id.* at 773 (citing *Necaise v. U.S.A.A. Cas. Co.*, 644 So.2d 253, 257 (Miss. 1992)).

"But Mississippi law," the court explained, "does not require that an insured continue to

hold its interest in the damaged property through the filing of a lawsuit[.]"  *Id.* at 772.

Indeed, the Seventh Circuit noted that "the parties . . . identified no authority suggesting

that any state, let alone Mississippi, requires that an insured continue to maintain an

insurable interest in the property while the claim is being negotiated and through litigation.

That rule would be hard to justify."  *Id.* at 773.  Accordingly, the court held that Southland

retained an insurable interest in the property and the post-loss, pre-lawsuit sale was

"irrelevant."  *Id.*

Factually speaking, this case is nearly identical to *Edgewood Manor*.  Moreover, there

can be no doubt that Pinehurst has an insurable interest in the property under Wisconsin

law.  As of April 3, 2011, when the hailstorm occurred, Pinehurst owned the Property and

was a named insured under the Policy.  In Wisconsin, the rights of insureds against an

insurer are fixed at the time of the loss.  *Rock Cnty. Sav. & Trust Co. v. London Assurance Co.*,

17 Wis. 2d 618, 620, 117 N.W.2d 676 (1962); 2 Arnold P. Anderson, *Wisconsin Insurance

Law* § 6.65 (6th ed. 2010).  While the parties cite little case law on this point, it also

appears that in Wisconsin, as in Mississippi, intervening transactions do not affect that

insurable interest once established.  *See Nolden v. Mut. Ben. Life Ins. Co.*, 80 Wis. 2d 353,

374, 259 N.W.2d 75 (1977) ("The right of an insured to recover for a loss covered by the

policy is determined as of the date of the loss, the [Wisconsin Supreme C]ourt said, and

this right is unaffected by subsequent events.") (discussing *Kolehouse v. Conn. Fire Ins. Co.*,

267 Wis. 120, 128, 65 N.W.2d 28 (1954)); *Musselman v. Serv. Fire Ins. Co. of N.Y.*, 267

Wis. 130, 132-33, 65 N.W.2d 33 (1954) ("The attempted foreclosure sale of the damaged

vehicle subsequent to the date of collision loss . . . did not affect the insurable interest of Universal C.I.T. at the time of loss.").  Just as Southland did in *Edgewood Manor*, therefore, Pinehurst retains the insurable interest it had at the time of loss, and the intervening sale to Welton is irrelevant.

Similarly, as in *Edgewood Manor*, Cincinnati Insurance's proposed substitute plaintiff Welton does *not* have standing to sue.  At the time of the sale, Pinehurst did not transfer to Welton the right to receive the insurance proceeds from *Cincinnati Insurance*.  Rather, Welton has only a contractual right to recover the proceeds from *Pinehurst*.  *Cf. Edgewood Manor*, 733 F.3d at 771 ("Edgewood Manor apparently has a contractual right to recover *from Southland* some or all of the proceeds Southland may receive from RSUI[.]") (emphasis in original).  The additional facts on which Cincinnati Insurance places so much emphasis -- for example, Welton's *de facto* authority to accept or reject settlement offers, and Pinehurst's agreement to use a particular consultant -- are irrelevant, just as they were in *Edgewood Manor*.  For example, the Seventh Circuit noted that Edgewood Manor became Southland's "attorney-in-fact" in its negotiations with RSUI, *id.* at 766, but that fact did not affect the court's determination that Edgewood lacked standing to sue on a replacement-cost claim.  *See id.* at 771-72.  Thus, the court agrees with plaintiffs that Welton lacks prudential, if not constitutional, standing under the *Edgewood Manor* holding, further illustrating why Pinehurst, not Welton, is the real party in interest in this suit.

Even if Pinehurst were not initially the real party in interest in this suit, the court would still deny Cincinnati Insurance's motion to substitute parties, because Welton has ratified this suit.  Rule 17(a)(3) provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a

reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.  After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."  Here, following Cincinnati Insurance's Motion to Stay Briefing on Summary Judgment, in which it suggested that plaintiffs were not the real parties in interest, the sole General Partner of Welton, Kurtis D. Welton, submitted an affidavit to the court that read in relevant part:

> If and to the extent that Welton Family Limited Partnership is deemed a real party in interest in this case:
>
> a. Welton Family Limited Partnership hereby ratifies this case in its entirety;
>
> b. Welton Family Limited Partnership hereby authorizes the continuation, with the present parties and caption, of this case; and
>
> c. Welton Family Limited Partnership hereby agrees to be bound by any result, including any orders and judgments, in this case.

(Kurtis D. Welton Aff. (dkt. #75) ¶ 8.)

Under Seventh Circuit precedent, this is sufficient to effect ratification.  *See CWCapital Asset Mgmt., LLC v. Chi. Properties, LLC*, 610 F.3d 497, 502 (7th Cir. 2010) (finding ratification when trustee submitted an uncontradicted affidavit to the district court ratifying the suit).  Logically, this makes sense: the object of the real party in interest rule is to protect defendants from multiple liability.  *See RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010); *see also In re Integrated Agric., Inc.*, 313 B.R. 419, 426 (Bankr. C.D. Ill. 2004) (ratification is "a mechanism to provide the defendant with the same protection of finality and *res judicata* that would have been achieved if the suit was brought by the ratifying

10

party"). Here, Welton has agreed to be bound by any result in this case, precluding it from maintaining a second suit on the Policy, and so the goals of ratification have been satisfied.[1]

## B. Advance Cable

In the alternative, Cincinnati Insurance asks the court to dismiss Advance Cable, arguing that because it owned the Policy but not the Property, it is only tenuously connected to this case. Advance Cable responds that it is a proper party, though not a necessary one, under Fed. R. Civ. P. 17(a)(1)(F), which provides that:

> The following may sue in their own names without joining the person for whose benefit the action is brought:
>
> … (F) A party with whom or in whose name a contract has been made for another's benefit.

The court agrees. Advance Cable is the sole owner of the Policy and the only named party to the contract with Cincinnati Insurance. It is suing on behalf of Pinehurst, the owner of the Property insured under that Policy. The fact that any monetary recovery ultimately inures to Pinehurst (and then to Welton) is irrelevant, since the language of the Rule itself

---

[1] Cincinnati Insurance responds only briefly, arguing that ratification does not excuse Welton from being joined in the suit and does not preclude the court from dismissing Pinehurst and Advance Cable. In support, it cites a single statement from *Posley v Clarian Health*, No. 1:11-cv-1511-TWP-MJD, 2012 WL 4101914, at *4 (S.D. Ind. Sept. 17, 2012), in which the court noted that "ratification allows the real party in interest to join the lawsuit and avoid dismissal." Likely that court was using the verb join in the general, rather than in the strictly legal, sense, since it goes on to state in the same paragraph, that "[r]atification is an *alternative* to joinder or substitution of the real party in interest." *Id.* (emphasis added). Although this court need not decide this issue here, this interpretation is consistent with the language of Fed. R. Civ. P. 17, which allows the real party in interest "to ratify, join, *or* be substituted into the action" to cure the defect. *See* Fed. R. Civ. P. 17(a)(3) (emphasis added). More importantly, Cincinnati Insurance has pointed to no case in which ratification was held to be insufficient, and Seventh Circuit case law assumes that ratification, without joinder or substitution, is sufficient. *See CWCapital*, 610 F.3d at 502. Indeed, since the principal purpose of Rule 17 is to protect defendants from multiple liability and that protection is accomplished by ratification, it would serve little purpose to require both ratification *and* joinder or substitution.

11

contemplates the benefit going to "another."  Thus, Advance Cable need not be dismissed from this suit.[2]

## II. Motion for Clarification

Cincinnati Insurance's motion for clarification essentially seeks a declaration that damages in this case are effectively limited to a diminution of value measurement by virtue of the court's summary judgment opinion.  As the court indicated at the status conference held on April 28, 2014, it did not intend in its ruling on summary judgment to limit either side to a diminution of value analysis, particularly given that: (1) the parties agree this is not a diminution of value case; and (2) the Policy itself does not provide for such damages. Rather, the court's intent was to explain why, in its view, Cincinnati Insurance had the right to debate coverage under the Policy, given the facts in its possession.  The court's ruling on bad faith also should not, and was not intended to, affect the parties' arguments with respect to damages.

In its motion, Cincinnati Insurance also argues that replacement cost is unavailable as a matter of law, because Advance Cable did not commence repairs within two years as required by the Policy.  As Advance Cable accurately points out, although styled a motion for clarification, this argument amounts to a second, late-filed motion for summary judgment.  Regardless of how amenable this issue might ordinarily be to resolution on summary judgment, Cincinnati Insurance is not entitled to a ruling on that issue as a matter of law now, months past the dispositive motion deadline and after its first motion for

---

[2] In so holding, the court nevertheless expects the parties to cooperate in streamlining the presentation of the evidence at trial to avoid unnecessary and potentially confusing factual complexities including simplifying ownership.

summary judgment proved largely unsuccessful.[3]   Accordingly, this aspect of Cincinnati Insurance's request for "clarification" is denied.

## III.  Request for Reconsideration

In its response to Cincinnati Insurance's motion for clarification, Advance Cable asks the court to reconsider its summary judgment ruling dismissing plaintiff's bad faith claim.[4] That request will be denied.

Advance Cable argues that the plain text of the Policy does not support Cincinnati Insurance's decision to deny coverage.  More specifically, it argues, via the incorporation of two of its previous briefs on bad faith (dkt. ##96, 106), that Cincinnati Insurance never conducted the required neutral investigation and analysis to determine whether there was coverage for the hail denting, meaning the claim could not have been "fairly debatable."  *See Miller v. Safeco Ins. Co. of Am.*, 761 F. Supp. 2d 813, 821 (E.D. Wis. 2010) (whether a claim is fairly debatable implicates whether the facts are properly investigated and developed, as well as whether the results of the investigation were subjected to a reasonable evaluation and review).   Advance Cable actually appears to concede that Cincinnati Insurance conducted at least some investigation, but argues that Cincinnati Insurance *could* not have conducted the required "reasonable evaluation and review," because under the plain language of the Policy, the question of diminution of value is immaterial.  (*See* Pl.'s Br. Opp'n Mot. Strike (dkt. #135) 4.)   The Policy does not condition payment upon some

---

[3] In any event, the parties appear to dispute whether repair work on the Property began within two years and whether Cincinnati Insurance's denial of coverage precludes its reliance on the two-year provision in the Policy under the doctrine of prevention.  These issues also need to be decided.

[4] Cincinnati Insurance formally moved the court to strike that section of the brief (dkt. #131), but it is really arguing that the court should deny the request for reconsideration, not that it should strike that request.  Accordingly, the motion to strike is denied.

diminution of value in the property covered, nor does it predicate coverage on the "need to pay." Rather, it is the terms of the Policy that must direct a reasonable insurer's coverage decisions. Thus, Advance Cable argues, while Cincinnati Insurance *may* have assessed the roof denting in good faith, its decision to deny coverage without any reference to the terms of the Policy was objectively unreasonable or, at a minimum, presents a jury question, rather than a question for this court to resolve as a matter of law.

Whatever merit there may be in Advance Cable's argument for reconsideration, it suffers from a fundamental defect: it was not raised on summary judgment. Motions for reconsideration are intended only to correct manifest errors of law or present newly-discovered evidence. They are not "vehicle[s] for rearguing previously rejected motions" or means "to introduce new evidence that could have been presented earlier." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Possibly in anticipation of this defect, Advance Cable passingly suggests that the court's ruling on summary judgment essentially adopted an argument Cincinnati Insurance never made, denying Advance Cable the opportunity to respond. This is untrue. Cincinnati Insurance essentially argued, however poorly, that the denting was not a "loss" because it was purely cosmetic and not visible from the ground. On this the court agreed, indicating that the denting, due to its placement and (for summary judgment purposes) minor nature, had not necessarily caused a "loss" -- what had Advance Cable lost, after all, if there was no structural, financial or cosmetic impact? -- but went on to hold that because "loss" was defined in the Policy as "loss or damage," the terms had different meanings, and under Wisconsin insurance law, "damage" usually requires only some discernible physical alteration. While this makes Cincinnati Insurance's original position on coverage wrong, the court continues to hold that Cincinnati Insurance's failure

14

to discern or act on this distinction between the definitions of "loss" and "damage" under the law is not enough for a finding of bad faith.

## IV. Motion to Strike

Finally, Cincinnati Insurance has filed a motion to strike the affidavits and supplemental reports of Advance Cable's roofing expert, David J. Tilsen, and bad faith expert, Peter R. Kochenburger. Both purport to be "supplemental reports," but neither in fact supplements the experts' previous reports. Rather, Kochenburger's "supplemental" expert report responds to Cincinnati Insurance's motion for clarification, while Tilsen's "supplemental opinions" respond directly to the April 4, 2014 report of Gregory J. Phillips, Cincinnati Insurance's roofing expert.[5] "Supplementation pursuant to Rule 26(e) is limited to matters raised in an expert's first report[.]" (*See* Prelim. Pretrial Conference Order (dkt. #36) 1.) Furthermore, neither report was served five days before the corresponding expert's deposition, which violates the pretrial conference order as well. (*See id.* at 1-2.) Thus, both reports are untimely and, pursuant to Fed. R. Civ. P. 37(c)(1), should be stricken "unless the failure was substantially justified or is harmless."

Advance Cable first argues that Cincinnati Insurance has not been prejudiced by the Kochenburger report. Kochenburger's new report provides his opinions as to why diminution of value and the economic waste doctrine are not applicable here. Because Cincinnati Insurance maintains that it is not actually advocating for diminution of value, Advance Cable argues, Kochenburger's report is harmless, serving only to oppose a theory that Cincinnati Insurance is not even advancing. But this is not an argument for allowing

---

[5] The parties stipulated to this later disclosure date for Gregory Phillips' report due to weather-related delays in the inspection of the Property. (*See* dkt. #112.)

the report.   Rather, it indicates the motion to strike is moot because the report has no relevance and will not be proffered, particularly in light of the fact that the court has expressly declined to give the parties additional time to find diminution of value experts, essentially removing those damages from the case.

Next, Advance Cable argues that its late disclosure of Tilsen's supplemental opinions is substantially justified.   Tilsen initially provided a "like kind" estimate of repair costs consistent with the language of the Policy itself, which requires that the property be "repaired or replaced with other property of generally the same construction and used for the same purpose as the lost or damaged property."   (*See* Michael G. Larson Aff. Ex. 1 (dkt. #42-1) ECF 52.)   When Phillips submitted *his* report of April 4, 2014, however, he raised for the first time the potential for the use of alternative roof systems.   In this way, Advance Cable argues, Tilsen's supplemental opinions simply respond to a newly-introduced damages theory about which it could not have known (given the Policy language) until it received the Phillips report.

While this explanation does not cure its untimeliness, it does to some extent account for it.   Moreover, since the report really only responds directly to Cincinnati Insurance's own expert, will not disrupt the trial, and was not withheld by Advance Cable out of any willfulness or bad faith, the court is inclined to allow its use in rebuttal only, provided it proves relevant.   *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

ORDER

IT IS ORDERED that:

1) Defendant The Cincinnati Insurance Company's motion to dismiss (dkt. #104) is DENIED.

2) Defendant's motion for clarification (dkt. #117) is GRANTED IN PART and DENIED IN PART, consistent with the opinion above.

3) Defendant's motion to strike request for reconsideration (dkt. #131) is DENIED.

4) Defendant's motion to strike expert affidavits and reports (dkt. #133) is DENIED AS MOOT with respect to Kochenberger's "supplemental" report and DENIED generally with respect to Tilsen's "supplemental" report.

Entered this 20th day of June, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge